IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | | |
|---|---|---|
| DOYLE JONES, <br> ADC #85202, | * <br> * <br> * | |
| Plaintiff, | * | |
| v. | * | No. 5:18-cv-00068-JJV |
| | * | |
| BRANDON CARROLL, Lieutenant, <br> Randall L. Williams Unit; *et al.*, | * <br> * <br> * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Doyle Jones ("Plaintiff") is a prisoner in the Ouachita River Unit of the Arkansas Department of Correction ("ADC"). He has filed a *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983 alleging that, from November 12 to 19, 2015, Defendants Dr. Robert Floss, Director of Nursing Wanda Suggs, Nurse Patty Cagle, Captain Kevin Courtney, and Lieutenant Annette Goins failed to provide him constitutionally adequate medical care for a dislocated shoulder while he was a prisoner in the Randall L. Williams Unit ("Williams Unit").[1] (Doc. No. 4.) The parties have requested a jury trial and consented to proceed before me. (Doc. Nos. 4, 35, 57.)

The Medical Defendants (Dr. Floss, Director Suggs, and Nurse Cagle) and the ADC Defendants (Captain Courtney and Lieutenant Goins) have filed separate Motions for Summary Judgment, arguing they are entitled to judgment as a matter of law. (Doc. Nos. 71-76.) Plaintiff has not responded, and this matter is now ripe for decision. After careful review, and for the following reasons, I find that both Motions for Summary Judgment should be GRANTED.

---

[1] All other claims raised in the Amended Complaint have been dismissed. (Doc. Nos. 48, 56, 64, 65.)

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.   FACTS

The facts viewed in the light most favorable to Plaintiff are as follows. In November 2015, Plaintiff was in the Williams Unit where he was receiving 500 mg of Naproxen twice a day and 50 mg of Nortriptyline once a day for the treatment of chronic pain in his back, shoulder, hips, and

feet. (Doc. No. 72-1 at 1-3; No. 72-3.)

On November 12, 2015, Plaintiff was scheduled to be transferred to the Grimes Unit sometime that afternoon. (Doc. No. 72-1 at 1-2, 13-16, 26; No. 72-2 at 14-15.) Around 10:00 a.m., Plaintiff got into a fight with three other inmates and his left shoulder was injured when correctional officers separated them. (*Id.*) The officers took Plaintiff to segregation and the other three prisoners to the infirmary. (*Id.*) Around 11:30 a.m., Nurse Cagle examined Plaintiff in his segregation cell. (Doc. No. 72-1 at 2.) He reported left shoulder pain and a possible dislocation. Nurse Cagle did not observe any bruising, redness, swelling, or break down in Plaintiff's shoulder, and she reported those findings to Dr. Floss, who ordered her to continue with preparations for Plaintiff's transfer to the Grimes Unit.[2] (*Id.*) Plaintiff claims that, while he was walking to the transport van, he saw Captain Courtney and Lieutenant Goins in the hallway and told them that he thought is shoulder was dislocated; but they did nothing about it.[3] (Doc. No. 72-2 at 18-24.) While being driven to the Grimes Unit, Plaintiff told the transport officer that he had pain in his shoulder. (*Id.*) The driver contacted Lieutenant Goins, who ordered Plaintiff be returned to the Williams Unit. (Doc. No. 74-3.) Upon arrival, Lieutenant Goins escorted Plaintiff to the infirmary, where he was examined by a non-party nurse. (*Id.*) Around 12:30 p.m., the nurse told Director Suggs Plaintiff might have a dislocated shoulder. (Doc. No. 72-1 at 3.) Defendant Suggs relayed this

---

[2] According to Nurse Cagle's notes, Plaintiff would not allow her to examine him, and he kept "moving [his] shoulder blade up and down stating it was dislocated." (Doc. No. 72-1 at 2.) During his deposition, Plaintiff testified that he did not refuse to be examined by Nurse Cagle. (Doc. No. 72-2 at 16.) At summary judgment, I must view this disputed fact in Plaintiff's favor.

[3] In his affidavits, Defendant Courtney denies having any interaction with Plaintiff on November 12, 2015. (Doc. No. 74-2.) Defendant Goins admits she saw Plaintiff in the hallway as he was being taken to the transport van, but denies he said anything to her about having a shoulder injury. (Doc. No. 74-3.) I will also view these disputed facts in Plaintiff's favor.

information to Dr. Floss, who ordered x-rays of Plaintiff's shoulder, which were taken later that day. (*Id.*) Around 10:30 p.m., the Williams Unit infirmary received the radiology report stating Plaintiff had an anteriorly and inferiorly dislocated shoulder, without acute displacement. (Doc. No. 72-1 at 4, 12.) Non-party nurses gave Plaintiff Tylenol and Naproxen for pain. (*Id.*)

On November 13, 2015, Dr. Floss and Director Suggs arranged for Plaintiff to be taken to a local hospital where his shoulder was relocated under general anesthesia. (Doc. No. 72-1 at 5-9, 13, 18-20; No. 72-2 at 56-65.) Plaintiff was discharged later that day with a sling and a prescription for acetaminophen with codeine (which is also known as Tylenol #3) for three days. (*Id.*; No. 72-3.) Plaintiff received that medication, along with his regularly scheduled Naproxen and Nortriptyline, when he returned to the Williams Unit. (*Id.*)

During the next five days, Plaintiff complained of shoulder pain only once during segregation rounds. (Doc. No. 72-1 at 5-9.) On November 17, 2015, which was after the Tylenol #3 prescription expired, a non-party nurse gave Plaintiff Naproxen and Nortriptyline for pain and put him on the waiting list to see the doctor. (*Id.*) On November 19, 2015, Plaintiff was transported to the Grimes Unit, where he continued to wear his sling until his left shoulder healed, in two or three months, and it has not dislocated thereafter. (Doc. No. 72-1 at 10, 21-26; No. 72-2 at 64-65.)

IV. ANALYSIS

    A.    **Medical Defendants' Motion for Summary Judgment.**

Defendants Cagle, Suggs, and Floss argue they are entitled to summary judgment on Plaintiff's inadequate medical care claims. (Doc. Nos. 71-73.) I agree.

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care." *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). To avoid summary judgment and proceed to trial, Plaintiff must have evidence: (1) he had an objectively serious need for

medical care for a dislocated shoulder; and (2) Defendants Cagle, Floss, and Suggs subjectively knew of, but deliberately disregarded, that serious medical need. *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). Because Defendants do not challenge the first element, the second element is the crux of this case. Deliberate indifference, which goes well beyond medical malpractice or even gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, an "inmate must demonstrate that a prison [medical provider's] actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014).

The record before me does not contain any evidence of deliberate indifference. Instead, it is undisputed Plaintiff: (1) was examined twice and had x-rays taken of his shoulder on the day he was injured; (2) had his shoulder relocated at a local hospital the day after his injury; and (3) received Tylenol #3, Naproxen, and Nortriptyline for pain. *See Fourte v. Faulkner Cnty.*, 746 F.3d 384, 390 (8th Cir. 2014) (finding no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner"). And, Defendants' medical expert concludes that the course of care was medically appropriate and resulted in no harm to Plaintiff.[4] (Doc. No. 72-3). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Reid v. Griffin*, 808 F.3d 1191, 1193 (8th Cir. 2015); *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010). Instead, Plaintiff must present evidence demonstrating the "course of treatment, or lack

---

[4] Defendants have provided the sworn affidavit of Dr. Jeffrey Stieve, M.D., who is the Regional Medical Director. (Doc. No. 72-3.)

thereof, so deviated from professional standards that it amounted to deliberate indifference." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2014).  Plaintiff has not done so.

Plaintiff believes Defendants Cagle, Suggs, and Floss should have completed a more thorough exam of his shoulder and ordered x-rays before clearing him for transfer to the Grimes Unit.  However, the "exercise of professional judgment, even if negligent, falls well short of deliberate indifference."  *A.H. v. St. Louis Cty., Mo.*, 891 F.3d 721, 727 (8th Cir. 2018); *see also Langford*, 614 F.3d at 460 (a prisoner's "mere disagreement with treatment decisions does not rise to the level of a constitutional violation"). More importantly, it is undisputed Plaintiff received a thorough exam and x-rays when he returned to the Williams Unit *approximately two hours* later, and there is no evidence that he was harmed by that brief delay.  *See Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (To avoid summary judgment, a prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment"); *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (same).

Plaintiff also contends Dr. Floss was deliberately indifferent when he changed the pain medication prescribed by the private physician, who relocated his shoulder.  (Doc. No. 72-2.)  But, he does not have any evidence to support that contention.  Instead, the medical records demonstrate the private physician prescribed Tylenol #3, which is what Plaintiff received when he returned to the Williams Unit. (Doc. No. 72-1 at 7-13.)  Further, even if there was evidence that Dr. Floss had changed Plaintiff's prescription it would not establish deliberate indifference because it is well settled that "prison doctors remain free to exercise their independent medical judgment."  *Saylor*, 812 F.3d at 646; *see also White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988) (a disagreement between medical experts about the appropriate course of care does not establish deliberate indifference).  Because there is no evidence Defendants Suggs, Floss, or Cagle were deliberately

indifferent to Plaintiff's serious medical needs, I am granting them summary judgment and dismissing Plaintiff's claims against them with prejudice.

### B. ADC Defendants' Motion for Summary Judgment

Defendants Courtney and Goins argue they are entitled to qualified immunity. (Doc. Nos. 74-76.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial"). Defendants Goins and Courtney are entitled to qualified immunity if: (1) the facts, viewed in the light most favorable to Plaintiff, do not establish a violation of his constitutional right to adequate medical care; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). I conclude Defendants are entitled to qualified immunity under the first prong of this analysis.

Plaintiff claims Defendants Courtney and Goins violated his constitutional rights by failing to arrange for him to receive further medical care for his shoulder before he was initially sent to the Grimes Unit. As previously mentioned, the parties dispute whether Plaintiff saw Defendants in the hallway and told them he needed more treatment for his shoulder. *See Vaughn v. Greene*

*County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006) ("To establish a constitutional violation, it is not enough that a reasonable officer should have known of the risk. Rather, the plaintiff must demonstrate that the official actually knew of the risk and deliberately disregarded it"). However, even if I presume that he did, there is no medical evidence demonstrating Plaintiff was harmed by the brief delay in receiving a thorough exam and x-rays when he returned to the Williams Unit infirmary approximately two hours later. *See Jackson*, 815 F.3d at 1119. Because Defendants Courtney and Goins are entitled to qualified immunity, I am granting them summary judgment and dismissing Plaintiff's claims against them with prejudice.

## V.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motions for Summary Judgment (Doc. Nos. 71, 74) are GRANTED, and Plaintiff's inadequate medical care claims against Defendants Floss, Suggs, Cagle, Courtney, and Goins are DISMISSED with prejudice.

2. I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order and the accompanying Judgement would not be taken in good faith.

DATED this 11th day of March 2019.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

8